# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**SUSAN MAE SHAFFER,**

    **Plaintiff,**

v.                                                                                                                        Case No: 5:16-cv-605-Oc-PRL

**COMMISSIONER OF SOCIAL SECURITY**

    **Defendant.**

## ORDER

Plaintiff appeals the administrative decision denying her application for Disability Insurance Benefits ("DIB"). Upon a review of the record, the memoranda, and the applicable law, the Commissioner's decision is **AFFIRMED.**

**I.  BACKGROUND**

On August 3, 2010, Plaintiff filed an application for DIB, alleging disability beginning January 5, 2009. (Tr. 140–43). The claim was denied initially, and upon reconsideration. (Tr. 85–87, 91–92). At Plaintiff's request, a hearing was held before Administrative Law Judge Robert D. Marcinkowski, who issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 12–73). Plaintiff's request for review was denied by the Appeals Council, but this Court then remanded the case back to the Commissioner. (Tr. 607–16).

The Appeals Council then entered a remand order directing the "the Administrative Law Judge [to] offer the claimant the opportunity for a hearing, address the additional evidence submitted, take any further action needed to complete the administrative record, and issue a new decision." (Tr. 620). The remand order also noted that "[t]he claimant filed an electronic

subsequent claim for Title II disability benefits on July 29, 2014. The Appeals Council's action with respect to the current electronic claim renders the subsequent claim duplicate. The Administrative Law Judge will consolidate the claim files, create a single electronic record, and issue a new decision on the consolidated claims."[1] (Tr. 620).

Upon remand, Administrative Law Judge Emily Ruth Statum (the "ALJ") held another hearing and entered another unfavorable decision. (Tr. 413–500). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 419). At step two, the ALJ determined that Plaintiff had the following severe impairments: fibromyalgia; Chiari malformation, Type I with need for surgery; status-post L4–S1 laminectomy and fusion; suboccipital craniotomy and Cl laminectomy; cervical disorder; seizure disorder; auto immune disorder; irritable bowel syndrome (IBS) with mild diverticulitis; colitis and enteritis; status post gallbladder surgery, degenerative joint disease; an affective disorder; a posttraumatic stress disorder (PTSD); alcoholism; and a history of substance abuse. (Tr. 419).

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 419–23). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a):

> The claimant can frequently balance or stoop, as well as occasionally kneel, crouch, crawl, or climb ramps or stairs. However, the claimant cannot climb ladders, ropes, or scaffolds. The claimant has to avoid concentrated exposure to vibration, as well as a concentrated exposure to hazards such as machinery and heights. She has the ability for unskilled work that requires carrying out simple instructions, and performing simple routine tasks during an 8-hour workday with close proximity to a bathroom for bathroom breaks every two hours.

(Tr. 423–43).

---

[1] The subsequent claim application Plaintiff filed in 2014 is not in the record before the Court.

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work. (Tr. 444). At step five, however, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform—cutter paster, document preparer, and table worker. (Tr. 445).

Thus the ALJ found that Plaintiff was not disabled from the onset date through December 31, 2015. (Tr. 445–46). Then Plaintiff declined to file exceptions to the ALJ's decision and the Appeals Council declined to elect review. (*See* Df.'s Br. at 2). With her administrative remedies exhausted, Plaintiff filed the instant appeal. (Doc. 1).

## II. STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by

substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

## III. DISCUSSION

Plaintiff raises two arguments on appeal: (1) the ALJ failed to fully and fairly develop the record and (2) the ALJ improperly considered the opinion of her treating physician Joseph C. Flynn, M.D., an orthopedic surgeon. As explained below, the ALJ's decision should be affirmed.

### A. The ALJ adequately developed the record

It is well-settled that the ALJ has a basic obligation to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).[2] This duty, however, does not relieve Plaintiff of her burden of proving that she is disabled, and consequently, Plaintiff is still responsible for producing evidence in support of her claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

---

[2] When the right to representation has not been waived, however, the ALJ's "basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with hearing procedures appears before him." *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982). Here, Plaintiff was represented during the hearing at issue. (Tr. 454, 456).

Thus "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). The court should be guided by whether the record shows evidentiary gaps that result in unfairness or clear prejudice. *Id.*

In other words, to show that remand is necessary, the plaintiff must "identify 'what facts could have been submitted . . . that would have changed the outcome.'" *Correa v. Colvin*, No. 8:15-CV-461-T-TGW, 2016 WL 7334642, at *4 (M.D. Fla. Mar. 18, 2016) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991)). At the very least, this "requires a showing that the ALJ did not have all of the relevant evidence before him [or her] in the record . . . , or that the ALJ did not consider all of the evidence in the record in reaching his [or her] decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985).

At issue here is whether the ALJ considered all of the evidence of record. As noted *supra*, after Plaintiff filed her original claim in 2010, she filed a subsequent claim in 2014 (the subsequent claim application is not in the record before the Court). Then, in 2015, the Appeals Council ordered the ALJ to, upon remand, "consolidate the [two] claim files, create a single electronic record, and issue a new decision on the consolidated claims." (Tr. 620). The Appeals Council also noted that "the current electronic claim renders the subsequent claim duplicate." (Tr. 620).

Plaintiff now asserts that the ALJ failed to follow the Appeals Council's remand order as the ALJ "overlooked the fact that Ms. Shaffer had filed a subsequent claim for benefits that she was supposed to consolidate with her original application." (Pl.'s Br. at 13). She further notes that the "list of exhibits [attached to the ALJ's decision] does not include any reference to the application that was filed on July 29, 2014." (Pl.'s Br. at 13).

So Plaintiff concludes that as the ALJ failed to consolidate the two claim applications, the ALJ failed to consider all of the evidence at issue. (Pl.'s Br. at 14). To support this conclusion, she contends that the 2014 application *may* have contained new consultative evaluations and *may* have new medical opinions from state agency doctors. (Pl.'s Br. at 14). But as explained, I submit that the ALJ adequately developed the record and did not otherwise commit reversible error by apparently omitting the 2014 application.

As an initial matter, though Plaintiff contends that her 2014 application may have contained new evidence not contained in her original 2010 application (e.g., new consultative evaluations and new state agency medical opinions), she has not presented any such evidence here. Absent a showing of what facts would have changed the ALJ's decision, I cannot find that Plaintiff has established the necessary prejudicial gap to require remand. *Accord Henderson v. Comm'r of Soc. Sec.*, 353 F. App'x 303, 305 (11th Cir. 2009) (holding that the plaintiff had failed to show the requisite prejudice when she did "not explain how the absence of a mental RFC assessment from the record precluded the ALJ from making an informed disability determination" or "explain how such an assessment would have affected the ALJ's overall disability determination"); *Correa*, 2016 WL 7334642, at *5 ("The plaintiff fails to establish prejudice because she does not show how the findings from an updated examination may be different from what the medical evidence already shows."). Indeed, without any information about what was contained in Plaintiff's 2014 claims application, I submit that it is pure speculation to say such unknown information would even support her claim of disability. *Cf., e.g.*, *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (declining to remand when the appellant asserted that additional evidence should be taken as "[t]he assertion that appellant might have benefited from a more extensive hearing is pure speculation.").

Further, Plaintiff's counsel, when offered an opportunity to object to the exhibit list during the hearing before the ALJ, made no objection to it. (Tr. 457). That is, Plaintiff, through counsel, made no objection to the absence of the 2014 application from the exhibit list. And then, when counsel was asked whether the record before the ALJ was thus complete, counsel again failed to note any deficiency. (Tr. 457); *cf., e.g.*, *Osborn v. Barnhart*, 194 F. App'x 654, 669 (11th Cir. 2006) (noting that the ALJ did not err by failing to re-contact a physician when the plaintiff "was represented by counsel, who neither requested a clarification nor objected that the medical records were inadequate").

And most notably, the ALJ discussed ample evidence dated *after* the 2014 application, both during the hearing (Tr. 460, 473) and in her written decision (Tr. 419, 421–22, 426–29, 433–38, 440–42). But Plaintiff has made no effort to show how any information contained in her 2014 application would have even contradicted the post-2014-application evidence the ALJ relied upon in finding that she is not disabled. Accordingly, given the absence of a showing that a prejudicial evidentiary gap exists, any error committed by the ALJ does not rise to the level necessary to remand for further proceedings. *See Ellison*, 355 F.3d at 1276; *Graham*, 129 F.3d at 1423; *Kelley*, 761 F.2d at 1540.

Further, to the extent that Plaintiff contends that the absence of the 2014 application reveals that the ALJ failed to consolidate the two applications and thus must be reversed, I reject this argument for two reasons. First, at the most fundamental level, Plaintiff has not told the Court how—if at all—that her 2014 application differed from her 2010 application. She does not, for example, state that she asserted new impairments in her 2014 application, nor does she state that the 2014 application addressed a period of alleged disability different from the period at issue in her 2010 application.

Certainly, any argument that this purported failure to consolidate would matter here would be based on a showing that the 2014 application contained new, material evidence that would change the outcome of the ALJ's decision. But as set forth *supra*, that is a showing that Plaintiff has not made. *See*, *e.g.*, *Colon v. Colvin*, 660 F. App'x 867, 869 (11th Cir. 2016) ("An error is harmless if it does not affect the ALJ's ultimate decision.") (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

Second, in the Appeals Council's remand order, it stated that "the current electronic claim renders the subsequent claim *duplicate*." (Tr. 620) (emphasis added). Thus, to the extent that the 2014 application was merely duplicative of the 2010 application, I cannot say that the ALJ committed reversible error by failing to consolidate the applications. Or, to borrow from the Government's brief, Plaintiff has not met her burden of showing harmful error as "the ALJ had no reason to mention the subsequent application because Plaintiff's prior application subsumed it on remand." (Df.'s Br. at 5–6); *see Sanchez v. Comm'r of Soc. Sec.*, No. 12–11762, 2013 WL 490029, *1 (11th Cir. Feb. 8, 2013) ("We have also declined to remand for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision.") (quoting *Ware v. Schweiker*, 651 F.2d 408, 412–13 (5th Cir. Unit A 1981)); *Washington v. Astrue*, No. 808CV1614T27GJK, 2009 WL 2949034, at *14 (M.D. Fla. Sept. 14, 2009) ("[A] single erroneous statement by an ALJ standing alone does not require remand.").

**B. The ALJ properly considered the medical evidence**

On October 13, 2015, Plaintiff underwent back surgery, a decompression and fusion with instrumentation at L4–S1. (Tr. 786). Two weeks later Dr. Flynn performed a post-operation examination, which is embodied in an examination note. (Tr. 785–87)

The note shows that during that exam Dr. Flynn found that Plaintiff, post-op, reported experiencing numbness in the toes of her right foot and intermittent lateral leg pain in her right leg. (Tr. 786). The doctor stated, however, that the numbness and pain were "much improved relative to pre op." (Tr. 786). Dr. Flynn found that after the surgery Plaintiff was in no acute distress, had a non-antalgic gait, had no tension signs, and no focal deficits upon motor testing. (Tr. 786). He further found that Plaintiff's surgical incision was healing well, with no erythema, ecchymosis, or drainage. (Tr. 786).

The doctor also reviewed post-op radiographs. According to Dr. Flynn, the imaging showed that "AP and lateral lumbar spine x-rays demonstrate alignment is well maintained. Instrumentation intact. Right L4 pedicle screw migrated into the disc space." (Tr. 786).

Then Dr. Flynn made an assessment that Plaintiff was "[d]oing well postoperatively, with appropriate postop discomfort" and that "[t]here has been excellent improvement of radicular pain." (Tr. 786). Finally, the treatment note included a treatment plan, which included a repeat check-up four weeks later, prescription drugs, wound care, a direction to call him if needed, and the following advisement: "Continue to moderate activity. *Avoid bending, lifting and twisting*." (Tr. 786) (emphasis added).

Dr. Flynn then performed a follow-up examination on December 2, 2015. (Tr. 787–89). Other than changing the prescription medication, his findings set out in this examination note for this subsequent exam are functionally identical, for purposes of the matter, to the previous findings. (*Compare* Tr. 788 *with* Tr. 786). Notably, Dr. Flynn again stated that Plaintiff's radicular pain had improved and that Plaintiff should "Continue to moderate activity. *Avoid bending, lifting and twisting*." (Tr. 788) (emphasis added). The doctor set another follow-up in six weeks.

And six weeks later, Dr. Flynn performed a third (and what appears to be final) post-op examination. (Tr. 789–91). Here again, for purposes of this appeal, the findings contained within the relevant examination notes are functionally identical to the previous examination findings. (*Compare* Tr. 790 *with* Tr. 786, 788). Dr. Flynn did, however, refer Plaintiff to physical therapy for her back and leg pain and *did not* further direct her to avoid bending, lifting, and twisting. (Tr. 790). Also, on February 26, 2016, Dr. Flynn prescribed Plaintiff aquatic therapy to strengthen, stretch, and stabilize her back, two to three times a week for four weeks. (Tr. 773).

Then, in the ALJ's written decision, the ALJ summarized and discussed many the above-mentioned findings.[3] (Tr. 428). The ALJ did not, however, mention the advisement that Plaintiff should avoid bending, lifting, and twisting.

At issue here is Plaintiff's argument that the ALJ failed to give weight to Dr. Flynn's advice that she avoid bending, lifting, and twisting. *See Winschel v Comm'r of Social Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (holding that the ALJ must state with particularity the weight given to

---

[3] The ALJ summarized the examination notes like this:
    On the post-surgery follow-up on October 28, 2015, the claimant reported numbness of her toes on the right foot and she still had intermittent right leg pain, but this was much improved. The x-ray of the lumbar spine showed alignment as well-maintained and instrumentation was intact. Dr. Flynn noted the claimant was doing well postoperatively with appropriate discomfort and there was excellent improvement with radicular pain. On December 2, 2015, it was documented that surgical pain had progressively improved despite claimant reporting back and intermittent leg pain with numbness in the right toes. Dr. Flynn noted the claimant was still doing well postoperatively with appropriate discomfort (Exhibit 22F).
    The January 12, 2016 x-ray of the lumbar spine showed intact hardware. On January 13, 2016, the claimant complained of back and leg pain, and that the left leg felt out of place with a burning sensation in the left foot. However, Dr. Flynn noted there were no focal deficits with motor testing and the back's mobility was appropriate for the level of surgery, as there was no tenderness or spasm observed. Dr. Flynn noted slow improvement but the claimant was still doing well postoperatively. The claimant was given referral to physical therapy for back and leg pain (Exhibit 22F). For further care of status-post lumbar fusion; on February 26, 2016, Dr. Flynn prescribed aquatic therapy two to three times a week for four weeks (Exhibit 21F).
(Tr. 428).

different medical opinions, including non-examining state agency physicians, and the reasons therefor). She bases this argument on the fact that though the ALJ discussed *in detail* many aspects of the examination notes, the ALJ did not mention or explain the weight given to Dr. Flynn's advisement that Plaintiff should avoid bending, lifting, and twisting. She further contends that the RFC, which allows for frequent stooping and occasional crouching, is inconsistent with Dr. Flynn's advisements.

In contrast, and in support of the ALJ's decision, Defendant asserts that Plaintiff has failed to carry her burden of showing that Dr. Flynn's opinion supports her claim of disability and thus the ALJ did not err.[4] I agree with Defendant.

The limitations of avoiding bending, lifting, and twisting were in effect—according to the examination notes at issue—from October 13, 2015 (assuming the first post-op follow-up examination advisement was retroactive to the surgery date) to Plaintiff's January 13, 2016 examination. This is, *at most*, a period of three months.

Under the Social Security Act, however, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period *of not less than 12 months*." 42 U.S.C.A. § 423(d(1)(A) (emphasis added); *cf. also* 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the

---

[4] Defendant also says that Dr. Flynn's advice that Plaintiff should avoid bending, lifting, and twisting is not a medical opinion for purposes of the Social Security Act, as the advisement "does not reflect his judgment about the nature and severity of her actual impairment" but, instead, reflects Plaintiff's "condition while recovering from surgery." (Df.'s Br. at 7); 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions."). For purposes of this appeal, I assume that the advisement constitutes a medical opinion.

duration requirement."). And as previously stated, Plaintiff is responsible for producing evidence in support of her claim of disability. *Ellison*, 355 F.3d 1272, 1276.

The limitation Plaintiff presents here (of avoiding bending, lifting, and twisting) was imposed for a period of time nine months shy of the statutory requirement. Thus Dr. Flynn's advisement that Plaintiff avoid certain movements for a three month period does not support her claim of disability. *See, e.g.*, *Isbell v. Comm'r of Soc. Sec.*, No. 6:11-CV-1076-ORL-DAB, 2012 WL 1970254, at *5 (M.D. Fla. June 1, 2012) (holding that treatment notes failed to "establish a disabling impairment lasting the requisite 12 months" when the notes indicated that certain alleged impairments and limitations lasted little more than six months).

Indeed, Plaintiff has presented no evidence that Dr. Flynn thought these limitations would exist at least twelve months; nor has she presented any evidence that these limitations have indeed existed beyond January of 2016 (at which point Dr. Flynn advised her to start physical therapy and declined to advise her to avoid bending, lifting, and twisting). *See Glover v. Comm'r of Soc. Sec.*, No. 3:10-CV-971-J-34MCR, 2012 WL 84775, at *6 (M.D. Fla. Jan. 11, 2012) (rejecting the plaintiff's argument that "the ALJ failed to adequately consider the records from [a doctor], which indicate Plaintiff is limited to sedentary work treatment," as the doctor's "treatment notes d[id] not provide evidence that Plaintiff's condition was of disabling severity for at least twelve consecutive months"); *Cerniglia v. Astrue*, No. 2:09-CV-631-FTM-DNF, 2010 WL 5093851, at *8 (M.D. Fla. Dec. 8, 2010) ("Dr. Gutman did not opine that Plaintiff would be unable to work for at least twelve consecutive months. Thus, giving full credit to Dr. Gutman's opinion would not establish that Plaintiff was disabled for at least twelve consecutive months as required by the Social Security Act.") (citations omitted).

Thus, as Plaintiff has not met her burden of showing that the physical limitations Dr. Flynn opined of lasted longer than three month, the ALJ did not err by failing to address such limitations.[5]

IV. **CONCLUSION**

For the reasons stated above, the ALJ's decision is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g). The **Clerk is directed** to enter final judgment for the **Commissioner** and **close the file**.

**DONE and ORDERED** in Ocala, Florida on July 31, 2017.

_____
PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record

---

[5] *See generally Valentin v. Acting Comm'r of Soc. Sec. Admin.*, No. 6:15-CV-1927-ORL-MCR, 2017 WL 840918, at *3 (M.D. Fla. Mar. 3, 2017) (affirming an ALJ's assessment of the plaintiff's mental impairment when the plaintiff "failed to show that the impairment lasted or could be expected to last for a continuous period of not less than twelve months."); *Midkiff v. Comm'r of Soc. Sec.*, No. 8:14-CV-2076-T-PRL, 2016 WL 853100, at *4 (M.D. Fla. Mar. 4, 2016) ("While Plaintiff focused on evidence suggesting some periods of greater symptoms . . . , she failed to show that she had disabling or additional mental limitations for a consecutive twelve-month period as required by the regulations."); *Parker v. Comm'r of Soc. Sec.*, No. 8:14-CV-1833-OC-PRL, 2015 WL 12859335, at *4 (M.D. Fla. Aug. 25, 2015) ("Although the record confirms that Plaintiff had suffered from kidney stones at various times in the past, there is no indication that they caused chronic symptoms lasting for more than 12 consecutive months."); *Sanderlin v. Comm'r of Soc. Sec.*, No. 2:14-CV-484-FTM-CM, 2015 WL 3627263, at *7 (M.D. Fla. June 10, 2015) ("Plaintiff also has not established that she suffered from two constitutional symptoms for the requisite duration, which is twelve consecutive months."); *Pappas v. Colvin*, No. 8:14-CV-1593-T-17TGW, 2015 WL 3489860, at *6 (M.D. Fla. June 2, 2015) ("[A]ll that Dr. Cortez's letter indicates is that the plaintiff was experiencing anxiety in connection with his cancer diagnosis and treatment" and thus the letter "does not show that the plaintiff had a severe mental impairment lasting at least 12 months."); *Surber v. Comm'r of Soc. Sec. Admin.*, No. 3:11-CV-1235-J-MCR, 2013 WL 806325, at *6 (M.D. Fla. Mar. 5, 2013) ("In sum, the Court finds that Plaintiff failed to meet her burden of proving that her alleged speech [loss] . . . precluded her ability to perform her past relevant work. Plaintiff produced no medical evidence in support of any limitations due to a speech impairment that would last for at least twelve months . . . ."); *Cheney v. Astrue*, No. 2:09-CV-597-FTM-DNF, 2011 WL 845781, at *3 (M.D. Fla. Mar. 8, 2011) ("This two-year gap in reports of mental health issues does not meet the Commissioner's duration requirement, which requires that an impairment last for twelve continuous months.").

Unrepresented Parties